UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

AUDRA HARRIS,

        Petitioner,   MEMORANDUM
   - versus -        AND ORDER
                11-CV-4727
SABINA KAPLAN,

        Respondent.

A P P E A R A N C E S

  AUDRA HARRIS
    116 Williams Avenue
    Brooklyn, New York 11207
    Pro Se *Petitioner*

  ERIC T. SCHNEIDERMAN
    New York State Attorney General
    120 Broadway
    New York, New York 10271
  By: Lisa Ellen Fleischmann
    *Attorney for Respondent*

JOHN GLEESON, United States District Judge:

  Audra Harris petitions for habeas corpus relief under 28 U.S.C. § 2254. Having completed a five-year term of incarceration, Harris is currently undergoing a five-year period of post-release supervision. For the reasons stated herein, Harris's application for relief is denied.

BACKGROUND

  In the spring of 2007, Harris became romantically involved with Miodrag Dragovic. When Dragovic ended the relationship, Harris, who suffers from alcoholism and has been diagnosed with major depressive disorder, narcissistic personality disorder with borderline personality traits, and borderline personality disorder, began an obsessive campaign to win back his affection. She called, wrote, and followed Dragovic relentlessly, even after a court order was

issued forbidding her to do so. In May 2007 Harris entered Dragovic's home, caused his locks to be changed, and stole his passport and laptop. In January 2008, Harris called the police to falsely report a suicide in Dragovic's apartment; firefighters to falsely report a fire in Dragovic's apartment; and the police to falsely report an injury due to the purported fire.

For these and other acts, Harris was arrested and charged with several crimes under the New York Penal Law. On June 20, 2008, appearing before Judge Grosso in the New York Supreme Court, Queens County, Harris agreed to a plea bargain pursuant to which she pled guilty to burglary in the second degree, criminal contempt in the first degree, falsely reporting an incident in the second degree, burglary in the third degree, and identity theft in the third degree. Prior to entering her guilty pleas, Harris was orally advised in court that, in exchange for pleading guilty, she would be permitted to enter an in-patient alcohol treatment program at Samaritan Village. According to the in-court discussion, if Harris successfully graduated from the treatment program, the charge for burglary in the second degree would be dismissed and the government would recommend a sentence of probation. If Harris did not graduate from the treatment program, the government would recommend and the judge would impose a sentence of ten years. During the plea colloquy, Harris signed a written waiver of her appeal rights (the "written waiver"). According to the written waiver, if Harris did not graduate from the treatment program, she would receive a prison sentence of seven years.

Pursuant to the plea agreement, Harris was released from prison for entry in the Samaritan Village treatment program on June 26, 2008. By her own admission, however, Harris never arrived at the treatment program; she absconded while she was being escorted from prison to the program. Harris ultimately turned herself over to authorities and was sentenced by Judge Grosso. At Harris's sentencing proceedings, Judge Grosso accepted Harris's admission that she

did not enter the treatment program as provided in her plea agreement, and he sentenced her to a prison term of ten years.

Harris timely appealed her judgments of conviction and sentences to the Appellate Division. In her principal brief written by counsel and her *pro se* supplemental brief, she argued that her plea was involuntary under *Santobello v. New York*, 404 U.S. 257 (1971). Harris also argued that her waiver of her right to appeal was involuntary because of the confusion resulting from the differences between the terms of the plea agreement as stated in court and the terms set forth in the written waiver. Finally, Harris argued that her sentences were excessive, that the court abused its discretion in imposing them, that she received ineffective assistance of counsel, and that she did not have the requisite *mens rea* for the burglary crimes of which she was convicted.

The Appellate Division considered Harris's challenges to her sentences on the merits, and it reduced her term of imprisonment from ten years to five years on the charge of burglary in the second degree and from a maximum of seven years to a maximum of four years on the charge of burglary in the third degree. The Appellate Division dismissed Harris's challenge that her plea was involuntary on procedural grounds, noting that she had failed to move to withdraw her pleas. The court dismissed Harris's remaining challenges on the merits.

Harris timely sought leave to appeal to the New York Court of Appeals. In her application for leave written by counsel as well as in her *pro se* request for reconsideration of the denial of leave to appeal, Harris raised many of the same claims she raised before the Appellate Division. The Court of Appeals denied Harris's application for leave to appeal on March 8, 2011, and it denied her motion for reconsideration on June 13, 2011. Harris timely filed her habeas petition in this court on September 26, 2011.

DISCUSSION

A.   *Standard of Review*

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or involved an unreasonable application of, a clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d). A habeas court must also presume that all state court factual determinations are correct, unless and until the petitioner has rebutted this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

B.   *Analysis*

Harris identifies three grounds upon which she believes habeas relief is warranted. First, she argues that when the government agreed that she would plead guilty in exchange for the opportunity to participate in an alcohol treatment program, the government also implicitly promised her a fair opportunity to succeed in treatment. By offering her solely an alcohol treatment program despite her serious mental health problems, the argument continues, the government breached its obligations under the plea agreement because she never had any chance to succeed in treatment that lacked a mental-health component. This, according to Harris, rendered her plea involuntary.

Harris is correct that a government failure to adhere to a promise made in a plea agreement renders involuntary a defendant's plea under that agreement. *See generally Santobello*, 404 U.S. 257. In such a case, the appropriate remedy is generally either to permit the plea to be withdrawn or to order specific performance. *United States v. Vaval*, 404 F.3d 144, 154

4

(2d Cir. 2005). However, in this case the government provided to Harris precisely what it promised: the opportunity to graduate from the Samaritan Village alcohol treatment program. Harris asks me to find an implicit promise – that she be provided an opportunity to succeed in treatment – in the government's explicit promise, but I cannot find that the Appellate Division's rejection of that argument was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see generally Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (defining standard under § 2254(d)(1)). Harris points to no precedent, and this Court knows of none, that establishes that such a promise is necessarily implicit in an express promise to allow a defendant to enter a specific treatment program. Accordingly, I cannot grant Harris's petition on this basis.

Harris argues that her plea was involuntary on a second ground. She claims that, as set forth in the written waiver, she pled guilty in exchange for a promise of a seven-year prison sentence if she failed to complete the treatment program. Despite this promise, however, Judge Grosso ultimately sentenced her to ten years of imprisonment.[1]

In reviewing a claim alleging that the government violated a plea agreement, "[t]he dispositive question . . . is what the parties to th[e] plea agreement reasonably understood to be the terms of the agreement." *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir. 1982) (quoting *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979)) (internal quotation marks omitted) (first and second alterations in original). Looking simply at the terms of the agreement as expressed in the written waiver, the meaning of the agreement to the parties appears clear:

---

[1] Respondent suggests that the Appellate Division did not specifically address Harris's claim that her pleas were involuntary on this ground and instead rejected the claim in vague terms on the merits. It appears from the record, however, that the Appellate Division specifically rejected Harris's involuntariness claims on procedural grounds, *see People v. Harris*, Nos. 08-09911, 08-09912, 08-09913, 08-09914, slip op. at 2 (N.Y. App. Div. Dec. 21, 2010) ("The defendant's contention, raised in her supplemental pro se brief, that her pleas were not knowing and voluntary, is unpreserved for appellate review since she failed to move to withdraw her pleas."), and thus Harris's claim may be procedurally barred. Respondent has failed to raise this non-jurisdictional defense, and I address the claim on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).

Harris would receive a sentence of seven years if she failed to graduate from the treatment program. However, the parties had lengthy a discussion with the trial court about the plea agreement, and in this discussion the terms of the agreement diverged from those in the written waiver. During the discussion, which occurred prior to Harris's entry of her guilty pleas, Judge Grosso specifically informed Harris that if she did not graduate from the treatment program, she "w[ould] face ten years incarceration plus five years post release supervision" on her top count. Transcript of Plea Proceedings at 14, *People v. Harris*, Nos. 2887/07, 92/08, 1528/08, 1529/08 (N.Y. Sup. Ct. June 20, 2008). He also told her that "the People's recommended sentence on burglary second degree will be ten years incarceration and five years post release supervision," *id.* at 11, *and* that he would follow the government's recommendation, *see id.* at 16 ("I will sentence you to ten years in jail."). When asked whether she understood what was facing, Harris replied, "Yes." *Id.*

At sentencing, Harris informed Judge Grosso that it was her understanding that, given the written waiver, she would be sentenced to seven years of incarceration because she had been unsuccessful in the treatment program. Transcript of Sentencing Proceedings at 4-7, *People v. Harris*, Nos. 2887/07, 92/08, 1528/08, 1529/08 (N.Y. Sup. Ct. Sept. 23, 2008). Judge Grosso then explained that he remembered a "ten-year promise" for Harris's top charge if she failed to graduate from the treatment program, *id.* at 7-8, and he imposed a ten-year sentence. Judge Grosso thus implicitly found that the parties to the plea agreement had reasonably understood the agreement to impose a ten-year, not a seven-year, prison term if Harris did not complete treatment.

I am unable to conclude that the state court's implicit factual finding was "an unreasonable determination of the facts in light of the evidence presented in the State court

6

proceeding," *see* 28 U.S.C. § 2254(d)(2), and I therefore cannot grant the petition on the ground urged. Although there was clearly evidence before Judge Grosso – in the form of the written waiver and Harris's claimed subjective understanding of the agreement – that the parties had reasonably understood the plea agreement to allow for a sentence of only seven years of imprisonment if Harris was unsuccessful in treatment, there was also significant evidence to the contrary before Judge Grosso. As discussed above, Judge Grosso engaged in a lengthy colloquy with Harris during which he made explicit the consequences of her failure to graduate from the treatment program. Indeed, he expressly told her, "I will sentence you to ten years in jail." Transcript of Plea Proceedings at 16. In light of the conflicting evidence, I might not make the same factual determination if I were to confront the question in the first instance. However, I cannot grant habeas relief simply because I believe the state court might have made an incorrect decision. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). I may do so only if I find that Judge Grosso's factual determination was unreasonable, *id.*, and I cannot do so on the evidence presented.

Harris requests relief on a third and final ground. She contends that I should grant her petition because she lacked the *mens rea* required for burglary in the second degree or burglary in the third degree.[2] This claim may be easily dispensed with, however, because Harris pled guilty to both crimes. Harris waived her right to challenge the sufficiency of the evidence against her when she admitted her guilt. *United States v. Maher*, 108 F.3d 1513, 1528 (2d Cir. 1997); *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) ("It is well settled that a

---

[2] It appears from this record that this claim was not raised before the New York Court of Appeals in Harris's application for leave to appeal or her request for reconsideration from the denial of leave to appeal. However, because respondent has represented that all claims were exhausted and does not raise a defense of procedural default, I decide this claim on the merits. *See Trest*, 522 U.S. at 89.

defendant's plea of guilty admits all of the elements of a formal criminal charge . . . ."). I therefore reject Harris's challenge.

## CONCLUSION

For the reasons set forth herein, Harris's petition for relief is denied. Although I advised Harris of her right to appeal after oral argument and instructed her on how to file a notice of appeal, I cannot say that she has made a substantial showing of a denial of a constitutional right. Accordingly a certificate of appealability shall not issue. Harris is advised that she may seek such a certificate from the court of appeals.

So ordered.

John Gleeson, U.S.D.J.

Dated: March 13, 2012
   Brooklyn, New York